IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION



SUPERIOR ASPHALT, INC.                                                                   PLAINTIFF

V.                                                           CIVIL ACTION NO. 4:05CV185TSL-AGN

TRAVELERS CASUALTY & SURETY COMPANY
OF AMERICA; and W.S. NEWELL, INCORPORATED                                   DEFENDANTS

## AGREED ORDER FOR ARBITRATION AND FOR STAY

CAME ON before this Court to be heard the joint *ore tenus* motion of the parties to submit this matter to arbitration, and the Court, after having heard and considered said motion, and being advised that the parties have agreed to the entry of this Agreed Order, hereby finds and orders as follows:

1.  Superior Asphalt, Inc. ("Superior") and W.S. Newell, Incorporated ("Newell") entered into a subcontract (the "Subcontract") for the highway construction project (the "Project") more fully referenced in the Subcontract. A copy of the Subcontract is attached hereto as Exhibit "A".

2.  Travelers Casualty & Surety Company of America ("Travelers") provided a bond for the Project, a copy of which is attached hereto as Exhibit "B".

3.  Superior filed this civil action seeking relief under the Subcontract and the Bond.

4.  Superior's claims against Newell arising out of and relating to this civil action, the Subcontract, the Bond and/or the Project (and the disputes and issues between the parties arising out of and related thereto) are hereby submitted to binding arbitration pursuant to the terms of this Agreed Order. The parties shall proceed with such arbitration. The case shall be stayed pending the conclusion of the arbitration.

5. Such arbitration shall be per the Construction Industry Rules (the "Rules") of the American Arbitration Association ("AAA"), subject to the other terms of this Agreed Order. Notwithstanding the Rules, the arbitration shall be conducted before a single arbitrator.

6. The parties shall not be required to conduct mediation prior to arbitration.

7. Before turning to the AAA, the parties shall attempt to agree on a private arbitrator to conduct said arbitration without administration by the AAA. If the arbitration is conducted before such a private arbitrator, then same shall be conducted privately without administration by (or filing with) the AAA. If the parties can agree on a private arbitrator, then said arbitrator shall conduct the arbitration pursuant to the Rules, except to the extent the parties hereafter agree otherwise.

8. If the parties are unable to agree on a private arbitrator, then the arbitration shall be administered by the AAA (including as to selection of the arbitrator) pursuant to the Rules and this Agreed Order, except to the extent the parties hereafter agree otherwise. Any party may at any time elect to stop the process of trying to agree on a private arbitrator and initiate (or call for initiation of) the arbitration with the AAA.

9. The arbitration shall be conducted in Montgomery County, Alabama.

10. Any party may return to this Court for the entry of such orders and/or judgments as are necessary and/or appropriate in light of the arbitration proceedings, including, but not limited to, in light of the award entered.

11. The proceedings in this civil action are stayed pending completion of the arbitration.

SO, ORDERED AND ADJUDGED this the 11th day of January, 2006.

_____
The Honorable Tom S. Lee
United States District Judge

**APPROVED AND AGREED:**


/s/ Ralph B. Germany, Jr.
Ralph B. Germany, Jr. (MSB#8640)
PURDY & GERMANY, PLLC
Post Office Drawer 1079
Jackson, MS  39215-1079

**ATTORNEY FOR PLAINTIFF**


/s/ William C. Hammack
William C. Hammack (MSB#2994)
Steven A. Kohnke (MSB#100349)
BOURDEAUX & JONES, LLP
505 Constitution Avenue
Post Office Box 2009
Meridian, Mississippi  39302-2009

**ATTORNEYS FOR DEFENDANTS**



File Copy

STATE OF ALABAMA
COUNTY OF MONTGOMERY

THIS AGREEMENT, entered into this __17th__ day of __SEPTEMBER__, 200_2_, by and between W S Newell, Inc., an Alabama corporation, of Montgomery, Alabama, hereinafter called CONTRACTOR and __Superior Asphalt, Inc.__, of __Jackson, Mississippi__, hereinafter called SUBCONTRACTOR,

### WITNESSETH:

WHEREAS, CONTRACTOR has heretofore entered into a General Contract with __Mississippi Dept Of Transportation__ hereinafter called the Owner, to furnish all labor and materials and perform all work required to complete the project known as __PLH-0024-04(018)/101194__, located in __Neshoba County MS__, in strict accordance with specifications, special provisions, plans and schedules now prepared by the OWNER:

NOW, THEREFORE, in consideration of the mutual agreements herein contained it is agreed as follows:

I. (A) SUBCONTRACTOR shall furnish all labor and materials and perform all work necessary to complete the following items of work in the General Contract and all work incidental thereto in all respects as is therein required of the CONTRACTOR, namely:

| Item No. | Item | Unit | Quantity | Unit Price | Amount |

See Attachment "A" Page I
Attached To And Made A Part Of:

Furnish Certificate Of Insurance Naming W.S. Newell, Inc. As Additional Insured With Waiver Of Subrogation.

(B) SUBCONTRACTOR is to complete the above items (sometimes referred to herein as the "Work") to the OWNER'S satisfaction, to replace all damaged items required by the OWNER at his own expense, to maintain the items contained herein until final acceptance of the project by the OWNER.

(C) The work contained herein is to be performed in accordance with Standard Specifications of __Mississippi Department Of Transportation__ as supplemented and amended by Supplemental Specifications and Special Provisions attached to and made a part of this SUBCONTRACT.

The provisions of this subcontract shall, in addition to other provisions, include by reference the appropriate provisions of the contract between W S Newell, Inc., and the __Miss.__ Highway Department dated _____ the current __Miss.__ Highway Department Standard Specifications, Supplemental Specifications and Special Provisions as evidenced by the Special Provision sheet of said contract, a copy of which is attached hereto.

(D) SUBCONTRACTOR shall procure at his own expense all required permits and licenses.

(E) SUBCONTRACTOR shall leave in place all signs, lights, and other traffic safety devices installed by him. These are not to be removed until the project is accepted by the owner.

(F) SUBCONTRACTOR shall indemnify CONTRACTOR and hold harmless against all claims for damages arising from accidents to persons or property occasioned by the SUBCONTRACTOR, its agents or employees; and SUBCONTRACTOR shall defend all suits brought against the CONTRACTOR on account of any such accidents and shall reimburse CONTRACTOR for any expense including reasonable attorney's fees sustained by CONTRACTOR by reason of such accidents.

(G) Before commencing the Work, Subcontractor shall provide and pay for insurance coverages of the kinds and in amounts not less than those set forth herein in paragraph I(H) from Company(s) acceptable to Contractor. The limits and types of insurance required by this contract are the minimums required and shall not relieve, reduce or limit the liability of the Subcontractor. Such insurance shall remain in effect for two years after completion of the project.

Subcontractor shall furnish certificate(s) of insurance satisfactory to the Contractor evidencing that the required insurance is in force and stating that the insurance will not be canceled, non-renewed or coverage or limits be materially changed to the detriment of any Additional Insured except after providing at least thirty (30) days actual, written notice to Contractor or longer if required by the Contract Documents between the Owner and the Contractor. Contractor shall have the right but not the obligation to review all of Subcontractor's insurance policies applicable to the Project.

As respects the insurance required to be furnished by this Agreement, Subcontractor and its Sub-Subcontractors and their insurers hereby waive all rights of subrogation against the Contractor and its Officers, Agents, and Employees. Subcontractor and its Sub-Subcontractors and their insurers also waive rights of subrogation against the Owner, Architect, Engineer, Officers, Agents, and Employees as required to be waived by Subcontractors and their Sub-Subcontractors in the Contract between the Owner and the Contractor.

Subcontractor shall immediately advise Contractor, in writing, of the facts and details of every accident and personal injury occurring in connection with the Work and shall make available, if requested by Contractor, a copy of every accident report made to Subcontractor's Insurance Carrier(s).

In the event that damage to the Work is covered by any Builder's Risk or similar property policy provided by the Contractor, the Owner or the Owner's Representative, Subcontractor will pay its pro-rata share of any applicable Deductible as the loss to Subcontractor's Work applies to the total loss.

Subcontractor shall cause Contractor and its Officers, Agents and Employees to be named as Additional Insureds under the Subcontractor's General Liability Policy, Automobile Liability Policy and Excess Liability Policy(s). Subcontractor shall also cause Owner, Architect, Engineer and any other entity or individuals to be named as Additional Insureds on any policies as required by the Contract between the Owner and the Contractor.

(Revised May 2002)

EXHIBIT "A"



Subcontractor and its Insurer(s) agree that for liabilities and responsibilities assumed by the Subcontractor under this Agreement, such policies shall be primary insurance for the Contractor and any other Additional Insured(s) as required by the Contract Documents and that the insurance maintained by the Contractor and other Additional Insureds shall be Excess and Non-Contributory. Compliance with this requirement shall be accomplished by endorsement to the policies as specified herein in paragraph I(H).

(H) The insurance coverages Subcontractor shall provide and pay for include:
  1. Commercial General Liability
     To include:
     a. Coverage on an "occurrence" basis
     b. Aggregate Limits of Insurance on a "per project" basis
     c. Coverages for:
        Premises/Operations
        Underground, Explosion and Collapse
        Products/Completed Operations-Maintained One year after completion of the work
        *Broad Form Contractual
        *Independent Contractors
        *Personal Injury
     *If the Comprehensive Liability Policy Form is used, the policy must be endorsed to include the Broad Form Comprehensive General Liability Endorsement.
  2. Automobile Liability
     Comprehensive Automobile Liability policy covering all Owned, Hired and Non-Owned Autos.
  3. Excess Liability - Umbrella Form (on an "occurrence" basis)
  4. Worker's Compensation and Employer's Liability
     To include:
     Statutory Coverage-State of Operations
     United States Longshoreman and Harborworkers Act Endorsement -if required
     Voluntary Compensation Endorsement -"If Any" Basis

(I) The minimum limits of coverage Subcontractor shall provide and pay for are:

| | | | |
|---|---|---|---|
| 1 | General Liability | $2,000,000 | General Aggregate per project |
| | | $2,000,000 | Products/Completed Operations Aggregate |
| | | $1,000,000 | Personal and Advertising Injury |
| | | $1,000,000 | Each Occurrence |
| | | $   50,000 | Fire Damage (any one fire) |
| | | $     5,000 | Medical Expense (any one person) |
| 2 | Automobile Liability | $1,000,000 | Combined Single Limit-Bodily Injury and and Property Damage |
| 3 | Excess Liability | $2,000,000 | Combined Single Limit-Bodily Injury and Property Damage |
| 4 | Worker's Compensation | | Statutory Limits |
| 5 | Employer's Liability | $ 100,000 | Each Accident |
| | | $ 500,000 | Disease-Policy Limit |
| | | $ 100,000 | Disease-Each Employee |

(J) The Certificate(s) of Insurance to be furnished by Subcontractor to Contractor, as set forth in paragraph I(G) hereof, will verify that:
  1. The Contractor, and its Officers, Agents and Employees are named as Additional Insureds on the General Liability, Auto Liability and Excess Liability policies. This will be accomplished by endorsement to the policies. For the General Liability policy, CG-20-10-11-85 or its equivalent must be used.
  2. The other entities, such as the Owner, the Architect, the Engineer and their Officers, Agents and Employees, are named as Additional Insureds as required in the contract Documents between the Contractor and the Owner. This shall be accomplished by endorsement to the policies. For the General Liability policy, CG-20-10-11-85 or its equivalent, must be used.
  3. No policy will be canceled, non-renewed or materially changed to the detriment of an Additional Insured unless thirty (30) days actual, written notification is given to the Certificate Holder.
  4. The Insurance provided to the Additional Insureds for liabilities and responsibilities assumed by the Subcontractor under the Subcontract will be primary and any other insurance maintained by the Additional Insureds shall be Excess and Non-contributory
  5. The General Aggregate applies on a "per project" basis.
  6. The Insurance Providers have waived all Rights of Subrogation against the Contractor and its Officers, Agents and Employees.
  7. The Insurance Providers have waived all rights of Subrogation against the Owner and others as required by the Contract Documents between the Contractor and the Owner.

(K) SUBCONTRACTOR accepts exclusive liability for all taxes and contributions required of the CONTRACTOR or SUBCONTRACTOR by the Federal Social Security Act and the Unemployment Compensation Act in respect to the employees of SUBCONTRACTOR in the performance of the work herein provided for, and agrees to furnish CONTRACTOR with suitable written evidence, if such is required, that it has been authorized to accept such liability. The SUBCONTRACTOR agrees to protect the CONTRACTOR against all liability in respect to said employees under such Act or Law.

(Revised May 2002)

(L) The SUBCONTRACTOR accepts exclusive liability for and agrees to pay any and all sales or use tax which may be assessed against materials, equipment or labor used in its part of the work.

(M) The SUBCONTRACTOR agrees to pay its pro rata share of the following items which are to be deducted from amounts due on current estimates to the SUBCONTRACTOR by the CONTRACTOR:

__Pro-Rata Share Of Bond & Gross Receipt Tax.__

(N) SUBCONTRACTOR shall make all alterations, furnish the material for and perform all extra work or omit any work which OWNER or CONTRACTOR may require, without nullifying this subcontract, at a reasonable addition to, or reduction from, the subcontract price, heretofore named, and pro rata to the same. No changes are to be made, however, except upon written order from CONTRACTOR, and CONTRACTOR shall not be held liable to SUBCONTRACTOR for any extra labor, materials, or equipment furnished without such written order.

(O) SUBCONTRACTOR shall provide safe and sufficient facilities at all times for inspection of the work by CONTRACTOR, the OWNER, or their authorized representatives, and shall within twenty-four (24) hours after receiving written notice from CONTRACTOR proceed promptly to take down all portions of the work and remove from the grounds and buildings all material, whether worked or unworked, which the OWNER or CONTRACTOR shall condemn or fail to approve, and shall promptly make good all such work, and all other work damaged or destroyed in removing or making good said condemned work.

(P) The SUBCONTRACTOR shall not employ any workmen or subcontractor whose employment on said project maybe objected to by the CONTRACTOR, or OWNER.

(Q) SUBCONTRACTOR shall turn said work over to CONTRACTOR in good condition and free and clear of all claims, encumbrances or liens and shall protect and save harmless CONTRACTOR and OWNER from all claims, encumbrances and liens growing out of the performance of this subcontract, and SUBCONTRACTOR will at its own cost and expense (including attorney's fees), defend all suits to establish such claims, and pay any such claim or lien so established.

(R) SUBCONTRACTOR shall, as often as requested by the OWNER or by CONTRACTOR, furnish a sworn statement showing all parties who furnish labor or materials to SUBCONTRACTOR, with their names and addresses and the amount due or to become due each. Like statement may be required from any subcontractors of the SUBCONTRACTOR.

II. (A) SUBCONTRACTOR shall complete its portion of the work herein contracted for within sufficient time to permit CONTRACTOR to complete the entire work under the General Contract with a reasonable amount of equipment and men working a reasonable number of hours per week. Should SUBCONTRACTOR breach this contract or otherwise delay its said work, CONTRACTOR will be caused to incur substantial damages, which may include not only a claim for liquidated damages by the OWNER, but also added expense to CONTRACTOR resulting from increased overhead, idle men and equipment and other expense incurred in connection with said work. SUBCONTRACTOR shall reimburse CONTRACTOR for any and all such damages caused by SUBCONTRACTOR, and the same may be deducted by CONTRACTOR from the agreed price of said work.

(B) In the performance of said work, SUBCONTRACTOR shall at all times maintain sufficient men, materials, supplies and equipment and supervision on said job and prosecute work with such care, diligence and promptness as will not cause delay in the progress of CONTRACTOR'S work or other branches of work carried on by other subcontractors. Should CONTRACTOR in its sole discretion determine that work is not being prosecuted as it should be prosecuted. CONTRACTOR may, either with or without prior notice, avail itself of either or all of the following remedies:

1. require that SUBCONTRACTOR place additional supervisors, men, materials, or equipment on said job to speed the pace of performance;
2. require that SUBCONTRACTOR prosecute such portions of the work as it may specify in preference to other portions of said work;
3. provide such men, materials, supplies, equipment and supervision as may speed the completion of said work and deduct the cost of the same plus 25 % percent of said cost from the amount then or thereafter due SUBCONTRACTOR;
4. terminate the employment of SUBCONTRACTOR, enter upon the premises and take possession, for use in completing the work, of all materials, supplies, tools, equipment and appliances of SUBCONTRACTOR and complete the work, or have the same completed by others, and be liable to SUBCONTRACTOR for no other payment under the contract until final payment is due and then only if and to the extent that the unpaid balance of the amount to be paid under this contract exceeds the expense of the CONTRACTOR in finishing the work;
5. retain all funds earned by SUBCONTRACTOR until the progress of work meets with CONTRACTOR'S approval;
6. allow SUBCONTRACTOR to complete said subcontract and then recover all actual damages sustained as a result of SUBCONTRACTOR'S breach of or delay in completing this subcontract.

(C) An election to pursue one of the foregoing remedies in paragraph (b) above will not bar or preclude CONTRACTOR from later pursuing the other remedies hereinabove specified, nor will such election bar CONTRACTOR from recovering from the SUBCONTRACTOR any damages sustained or expenses incurred by CONTRACTOR in excess of the retained earnings of SUBCONTRACTOR.

(D) To secure performance by SUBCONTRACTOR and reimbursement for any funds expended by CONTRACTOR hereunder, CONTRACTOR shall have a lien upon all materials, tools, appliances and equipment of the SUBCONTRACTOR on the premises or used in connection with said work.

(E) Should SUBCONTRACTOR at any time fail to pay for all labor, materials or supplies used by SUBCONTRACTOR in said work when due, CONTRACTOR may, at its option pay for same and charge same to SUBCONTRACTOR.

(F) Should SUBCONTRACTOR default in any of the provisions of this subcontract, CONTRACTOR may terminate the same. Should CONTRACTOR employ an attorney to enforce any provision hereof or to collect damages for breach of the subcontract or to defend an unsuccessful action or an unsuccessful countersuit brought or asserted by SUBCONTRACTOR against CONTRACTOR, SUBCONTRACTOR agrees to pay CONTRACTOR such reasonable attorney's fees as it may expend therein. As against the obligations herein contained, SUBCONTRACTOR waives all rights of exemption.

(G) SUBCONTRACTOR shall not sublet, assign or transfer this subcontract, or any part thereof, without the written consent of the CONTRACTOR.

(Revised May 2002)



III. CONTRACTOR shall pay SUBCONTRACTOR for work performed by SUBCONTRACTOR within ten (10) days after payment is received from the OWNER by the CONTRACTOR. CONTRACTOR shall withhold ____10%____ retainage from gross amount due SUBCONTRACTOR on each estimate; said retainage to be paid to SUBCONTRACTOR within ten (10) days after CONTRACTOR has received final payment from the OWNER.

IV. (A) CONTRACTOR shall not be liable to the SUBCONTRACTOR for delay in SUBCONTRACTOR'S work by the act, neglect or default of the OWNER, or its representatives, or by reason of fire or other casualty, or on account of riots, or of strikes, or other combined action of the workmen or others, or on account of any acts of God, or any other cause, beyond CONTRACTOR'S control, or on account of any circumstances caused or contributed to by the SUBCONTRACTOR, but CONTRACTOR will cooperate with SUBCONTRACTOR to enforce any just claim against the OWNER for delay.

(B) Should SUBCONTRACTOR be delayed in its work by CONTRACTOR, then CONTRACTOR shall owe SUBCONTRACTOR therefor only an extension of time for completion equal to the delay caused and then only if a written claim for delay is made to CONTRACTOR within forty-eight (48) hours from the time of the beginning of the delay.

V. (A) The provisions of the General Contract, including the Standard Specifications of __Mississippi Department Of Transportation__ and all special provisions and plans and schedules made a part of said General Contract, in so far as the same apply, are incorporated into and become a part of this subcontract, unless a conflicting agreement or provision is herein made.

(B) CONTRACTOR shall have the same rights and privileges as against the SUBCONTRACTOR herein as the OWNER in the General Contract has against the CONTRACTOR, except as hereinabove limited.

(C) All work shall be done under the direction of the Engineer for the OWNER, and his decisions as to the true construction and meaning of the plans, special provisions and specifications shall be final. SUBCONTRACTOR shall conform to and abide by any additional specifications, drawings or explanations furnished by the OWNER to illustrate the work to be done.

(D) This subcontract contains the entire agreement between the parties, and all additions thereto or changes therein shall be in writing and shall not be binding unless same are in writing.

(E) This subcontract is executed in the State of Alabama and provides for work to be done within the State of, and shall be subject to and governed by the laws of __Mississippi__

VI. A failure to assert any right under this subcontract shall not be construed as a waiver of such right but the same may be asserted by CONTRACTOR at any time, even after completion and final settlement of said contract.

VII. AGREEMENT TO ARBITRATE

The parties hereto desire that all disputes related either directly or indirectly to this Agreement, and that all other disputes between them, be resolved by binding arbitration.

A. The parties mutually acknowledge and agree that this Agreement entered between them is an agreement involving, affecting, and having a direct and substantial impact upon, interstate commerce.

B. The parties agree that all claims, demands, disputes or controversies of every kind or nature between them related in any way, either directly or indirectly, to this Agreement, to the relationship between them, to any dealings between them, to any other agreement or agreements between them, to any communications or representations involving them, or to any other matters involving them, shall be settled exclusively by binding arbitration to be conducted in Montgomery County, Alabama, and which, unless the parties mutually agree otherwise, shall be conducted through, and in accordance with the then current Rules of, the American Arbitration Association. This agreement to ARBITRATE is all encompassing and is intended to apply to all disputes of every kind and nature between the parties hereto, including their officers, employees, agents and affiliated entities. The parties agree that any question regarding whether a particular controversy is subject to arbitration shall be decided in arbitration.

C. Either party may demand arbitration by serving upon the other party a written demand for arbitration along with a statement of the matter in controversy. The demand for arbitration shall also be filed with the American Arbitration Association. A demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen, but in no event after the time when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

D. The parties mutually agree that the award rendered by the arbitrator or arbitrators shall be final and binding, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction.

E. The parties hereto agree that they shall not suspend the performance of the Work pending the final resolution of arbitration proceedings.

F. This agreement to ARBITRATE is binding upon, and inures to the benefit of, the parties hereto, and the officers, employees, agents and affiliated entities of each of them. This agreement to ARBITRATE will survive payment of any obligations due, or claimed to be due, from one party to the other and any termination, cancellation or performance of the transactions or obligations between the parties hereto.

G. If any portion of this agreement to ARBITRATE is found to be invalid or unenforceable, such finding shall not effect the validity, enforceability, or applicability of the remaining portions of this agreement to ARBITRATE.

H. THE PARTIES HERETO UNDERSTAND THAT THEY ARE AGREEING TO RESOLVE THE DISPUTES BETWEEN THEM BY BINDING ARBITRATION, RATHER THAN BY LITIGATION IN ANY COURT. THE PARTIES UNDERSTAND THAT THEY ARE GIVING UP AND RELINQUISHING ANY AND ALL RIGHT TO A TRIAL BY JURY.

VIII. This subcontract is executed in three counterparts, each of which shall be considered an original, and such counterparts shall, together, constitute and be one and the same instrument. One such counterpart is delivered in each of the parties to this subcontract.

IN WITNESS WHEREOF, W.S. Newell, Inc., an Alabama corporation, has caused this subcontract to be executed by its duly authorized officers and its corporate seal to be hereunto affixed, and ___Superior Asphalt, Inc.,___ a Mississippi _____ corporation, has caused this subcontract to be executed by its duly authorized officers and its corporate seal to be hereunto affixed, all as of the day and date first above written.

(SEAL)
ATTEST:

_____
Its Secretary

(SEAL)

_____
Its Secretary

W.S. NEWELL, INC.
BY: _____
Its Vice President

SUPERIOR ASPHALT, INC.
BY: _____
Title: VICE PRESIDENT
Date: 17 SEP 2002

(Revised May 2002)

rime Contractor: W.S. Newell, Inc.  
Subcontractor: Superior Asphalt, Inc.

Project No. PLH-0024-04(018)/101194  
Neshoba County Mississippi

ATTACHMENT "A" Page 1

| ITEM NO. | DESCRIPTION | UNIT | QUANTITY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 202-B | Removal Of Asphalt Pavement(All Depths) | Sq Yd | 33,287 | 1.45 | $ 48,266.15 |
| 907-306-A | Asphalt Drainage Course | Sq Yd | 97,079 | 7.16 | $ 695,085.64 |
| 907-403-A | Hot Mix Asphalt, HT, 9.5-mm mixture | Ton | 3,144 | 44.95 | $ 141,322.80 |
| 907-403-A | Hot Mix Asphalt, HT, 12.5-mm mixture | Ton | 4,002 | 44.95 | $ 179,889.90 |
| 907-403-A | Hot Mix Asphalt, HT, 19-mm mixture | Ton | 30,651 | 40.00 | $ 1,226,040.00 |
| 907-403-D | Hot Mix Asphalt, HT, 9.5-mm mixture, Polymer Modified | Ton | 7,846 | 45.50 | $ 356,993.00 |
| 907-403-D | Hot Mix Asphalt, HT, 12.5-mm mixture, Polymer Modified | Ton | 10,515 | 44.35 | $ 466,340.25 |
| 406-A | Cold Milling of Bituminous Pavement (All Depths) | Ton | 1,560 | 5.00 | $ 7,800.00 |
| 408-A | Asphalt for Prime Coat, Cut-Back MC-70 or Emulsified EA-1 | Gal | 5,206 | 1.00 | $ 5,206.00 |
| 620-A | Mobilization (Partial)    Lump Sum | | Lump Sum | | $ 58,500.00 |
| | | | Total: | | $ 3,185,443.74 |

- Unit Prices Does Not Include, Maintenance Of Traffic Nor Construction Staking.
- W.S. Newell, Inc. Reserves the Right to Perform the Removal Of Asphalt Pavement if it Elects to do so During Construction.
- Superior Asphalt Reserves the Rights to Subcontract Item # 410 Asphalt Drainage Course to Others.

WITNESS: _____

WITNESS: _____

W.S. NEWELL, INC.  
SAM NEWELL,  VICE PRESIDENT

SUPERIOR ASPHALT, INC  
BY: _____  
TITLE: VICE PRESIDENT  
DATE: 17 SEPT 2002

SECTION 903

CONTRACT BOND FOR: __PHL-0024-04(018)/101194__

LOCATED IN THE COUNTY OF: __Neshoba__

STATE OF MISSISSIPPI,

COUNTY OF HINDS

Know all men by these presents: that we, __W. S. Newell, Inc.__ _____ Principal, a __Corporation__

residing at __Montgomery__ in the State of __Alabama__

and __Travelers Casualty & Surety Company of America__

residing at __Hartford__ in the State of __Connecticut__,

authorized to do business in the State of Mississippi, under the laws thereof, as surety, are held and firmly bound unto the State of Mississippi in the sum of __Nine Million, Six Hundred Seven Thousand, One Hundred Fifty and 48/100__

($ __9,607,150.48__ ) Dollars, lawful money of the United States of America, to be paid to it for which payment well and truly to be made, we bind ourselves, our heirs, administrators, successors, or assigns jointly and severally by these presents.

Signed and sealed this the __3rd__ day of __October__ A.D. __2002__.

The conditions of this bond are such, that whereas the said __W. S. Newell, Inc.__

principal, has (have) entered into a contract with the Mississippi Transportation Commission, bearing the date of __3rd__ day of __October__ A.D. __2002__ hereto annexed, for the construction of certain highways in the State of Mississippi as mentioned in said contract in accordance with the plans, specifications and special provisions therefor, on file in the offices of the Mississippi Department of Transportation, Jackson, Mississippi.

Now therefore, if the above bounden __W. S. Newell, Inc.__

_____ in all things shall stand to and abide by and well and truly observe, do keep and perform all and singular the terms, covenants, conditions, guarantees and agreements in said contract, contained on his (their) part to be observed, done, kept and performed and each of them, at the time and in the manner and form and furnish all of the material and equipment specified in said contract in strict accordance with the terms of said contract which said plans, specifications and special provisions are included in and form a part of said contract and shall maintain the said work contemplated until its final completion and acceptance as specified in Subsection 109.11 of the approved specifications, and save harmless said Mississippi Transportation Commission from any loss or damage arising out of or occasioned by the negligence, wrongful or criminal act, overcharge, fraud, or any other loss or damage whatsoever, on the part of said principal (s), his (their) agents, servants, or employees in the performance of said work or in any manner connected therewith, and shall be liable and responsible in a civil action instituted by the State at the instance of the Mississippi Transportation Commission or any officer of the State authorized in such cases, for double any amount in money or property, the State may lose or be overcharged or otherwise defrauded of, by reason of wrongful or criminal act, if any, of the Contractor(s), his (their) agents or employees, and shall promptly pay the said agents, servants and employees and all persons furnishing labor, material, equipment or supplies therefor, including premiums incurred, for Surety Bonds, Liability Insurance, and Workmen's Compensation Insurance; with the additional obligation that such Contractor shall promptly make payment of all taxes,


EXHIBIT "B"

SECTION 903 - CONTINUED

licenses, assessments, contributions, damages, any liquidated damages which may arise prior to any termination of said principal's contract, any liquidated damages which may arise after termination of the said principal's contract due to default on the part of said principal, penalties and interest thereon, when and as the same may be due this state, or any county, municipality, board, department, commission or political subdivision: in the course of the performance of said work and in accordance with Sections 31-5-51 et seq. Mississippi Code of 1972, and other State statutes applicable thereto, and shall carry out to the letter and to the satisfaction of the Executive Director of the Mississippi Department of Transportation, all, each and every one of the stipulations, obligations, conditions, covenants and agreements and terms of said contract in accordance with the terms thereof and all of the expense and cost and attorney's fee that may be incurred in the enforcement of the performance of said contract, or in the enforcement of the conditions and obligations of this bond, then this obligation shall be null and void, otherwise to be and remain in full force and virtue.

Witness our signatures this the __3rd__ day of __October__ A.D. __2002__.

W. S. Newell, Inc.
(Contractors) Principal

By /s/ _____

Title _Vice President_
(Contractor's Seal)

Travelers Casualty & Surety Company of America
Surety

By /s/ _____
Jane Huddleston  (Signature) Attorney in Fact

Charles F. Porter, Resident Mississippi Agent
Barksdale Bonding and Insurance, Inc.
P. O. Box 13389, Jackson, MS 39236-3389
(Name and address of local (Mississippi) representative.)
(Surety Seal)

Revised 1/18/2000

